NOT FOR PUBLICATION                                    (Doc. Nos. 28, 35)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                        :
WOODROW BULLOCK, JR.,                   :
                                        :
              Plaintiff,                :          Civil No. 10-1412 (RBK/AMD)
                                        :
       v.                               :                **OPINION**
                                        :
ANCORA PSYCHIATRIC HOSPITAL, et         :
al.,                                    :
                                        :
              Defendants.               :
_____        :

**KUGLER**, United States District Judge:

        Plaintiff is involuntarily committed at the Ancora Psychiatric Hospital ("Ancora").

Plaintiff claims that he was physically restrained and forcibly medicated without justification.

He asserts various claims against eight Ancora employees related to his restraint and forced

medication.  Defendants now move to dismiss the Second Amended Complaint for failure to

state a claim under Rule 12(b)(6).  (Doc. No. 28).  Plaintiff opposes Defendants' motion to

dismiss and moves to seal medical records that he submitted in opposition to Defendants' motion

to dismiss.  (Doc. No. 35).  For the reasons discussed below, Defendants' motion to dismiss is

granted in part and denied in part and Plaintiff's motion to seal is granted.

# I.    BACKGROUND[1]

According to Plaintiff, at approximately 8:00 p.m., on April 6, 2008, Defendant

Constance Kellum, a "human services assistant" who was assigned to monitor Plaintiff's hall,

noticed Plaintiff talking to another patient and showing the patient an unidentified object.

(Second Am. Compl. ¶ 24).  Kellum asked Defendant Marie Ann Cabasa, the "charge nurse"

assigned to Plaintiff's hall, if she could search Plaintiff's room for contraband while Plaintiff was

in the shower.  (Id. ¶ 25).  As a result of her search, Kellum found and confiscated two

tablespoons of coffee from Plaintiff's room.

Plaintiff was notified that the staff had confiscated the coffee.  Plaintiff became agitated

and spoke to a staff member about harming himself.[2]  Cabasa subsequently received a telephone

call from Ancora's Human Services Police informing her that Plaintiff had called 9-1-1 to report

concerns regarding his treatment.[3]  Cabasa then told Plaintiff that he should speak with the

medical staff and the public advocate rather than the police regarding his concerns.  Plaintiff

---

[1] The facts are taken from Plaintiff's "Amended Complaint to the Second Amended Complaint" (the "Second Amended Complaint"), (Doc. No. 19), and certain medical records incorporated by reference therein.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (holding that a court may consider documents outside the pleading on a motion to dismiss pursuant to Rule 12(b)6) if the complaint incorporates the documents by reference). .  Plaintiff's Brief in Opposition to Defendants' motion to dismiss makes reference to video footage that was obtained by Plaintiff after he filed the Second Amended Complaint.  Plaintiff suggests in his brief that Defendants improperly delayed delivery of the video tape and even destroyed other evidence.  (See Pl.'s Opp. Br. at 9, 13).  Based on the alleged video footage, Plaintiff includes many new factual allegations in his brief regarding the individual conduct and knowledge of the eight Defendants.  Plaintiff's submission is improper.  Plaintiff may not evade dismissal of the operative pleading by supplementing it with new facts in his opposition brief.  See Commw. of Pa. Ex. Rel Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotations omitted); Marks v. Struble, 347 F. Supp. 2d 136, 148 (D.N.J. 2004) (refusing to consider facts raised for the first time in response to the defendants' motion to dismiss).  Thus, the Court limits its review of Plaintiff's claims to the facts pled in the Second Amended Complaint.  If Plaintiff has discovered new facts that support his claim, he must move to amend the Second Amended Complaint.

[2] The Second Amended Complaint incorporates by reference Cabasa's written report of the incident.  That report explains that Plaintiff was agitated and spoke about harming himself.  (See Pl.'s Opp. Br, Ex. A).

[3] The Second Amended Complaint alleges that Ancora's video cameras recorded Plaintiff standing in the hallway outside of his room and Defendant Raymond E. Fisher, a human services assistant, was "trailing him." (See Second Am. Compl. ¶ 28).  The Complaint also alleges that the video footage shows Plaintiff and Fisher walk to a public telephone that is designated for patient use.  (Id. ¶ 29).

alleges that this was meaningless advice because neither the medical team assigned to Plaintiff nor the public advocate were available that evening.

In response to Plaintiff's agitation and threats to harm himself, Cabasa asked Plaintiff whether he wished to receive an Haldol intramuscular injection per his doctor's prescription.[4] Plaintiff refused, but Cabasa nevertheless attempted to administer the injection.  Plaintiff tried to physically prevent the injection and "fought" with the staff.  (Pl.'s Opp. Br., Ex. A, at NJ001).  Consequently, Cabasa ordered a "code Blue," which involved nine staff members physically restraining Plaintiff so that Cabasa could administer the injection.  Plaintiff alleges that Cabasa participated in restraining him.  Plaintiff does not identify the other staff members involved in the restraint, nor does he allege that any Defendant other than Cabasa participated in restraining him.

During the struggle "one or more of the defendants" twisted Plaintiff's ankle to the point that he suffered a "trimalleolar" fracture.[5]  (Second. Am. Compl. ¶ 45).  Plaintiff also alleges that after administering the injection, the staff placed Plaintiff in a "four-point restraint," which involves trying down his hands and ankles to prevent him from moving.  (Id.).  Cabasa's report from the incident states that Plaintiff suffered "no injuries."  (Id. ¶ 47).  Plaintiff claims that he was held in the restraint for several hours, and that he pleaded with the staff to address his ankle injury, but they ignored him.  A separate report by Defendant Young Chang, M.D., also states that Plaintiff had no "injuries."  (Id.).  However, a report by Defendant Samuel Sarmiento, M.D., dated April 7, 2008, notes that Plaintiff sustained an ankle injury, orders that Plaintiff use a wheelchair, and schedules an ankle x-ray.  (Id. ¶ 47).  A report by Shailendra Desai, M.D., dated

---

[4] Doctors at Ancora have prescribed Plaintiff various medications, including Haldol intramuscular injections for use on an "as needed basis."  (Second Am. Compl. ¶ 22).

[5] A trimalleolar fracture is a fracture that reaches three distinct parts of the ankle bone.

April 7, 2008, diagnosed Plaintiff with a trimalleolar fracture of the right ankle.  (Id. ¶ 50).

According to Plaintiff, notwithstanding Dr. Desai's diagnosis, Ancora did not send him for an

orthopedic evaluation for five days and prescribed him only 600 milligrams of Motrin for pain.

On April 11, 2008, an orthopedic surgeon evaluated Plaintiff's ankle and recommended

"surgical management" of the fracture.  (Id. ¶ 54).  Plaintiff underwent surgery on April 14,

2008.  The surgeon installed a seven-hole plate to reduce the fracture.  Plaintiff still experiences

pain, swelling, and limited mobility as a result of the injury.

Plaintiff filed the Complaint in March 2010 against Ancora, the State of New Jersey, the

New Jersey Commissioner of the Department of Human Services, and numerous individual

Ancora employees.  Plaintiff amended the Complaint twice.  As a result of Plaintiff's

amendments, the only remaining Defendants are the following eight Ancora employees:  Marie

Ann Cabasa, Lori Gardenshire, Constance Kellum, Raymond Fisher, Jeanne Coffee Senkovic,

Samuel Sarmiento, M.D., Dipesh Patel, M.D., and Young Chang, M.D.

Plaintiff asserts the following claims against all eight Defendants:  (1) "Violation of the

Civil Rights Act of 1964;" (2) "Violation of the 14th Amendment;" (3) "Violation of 42 U.S.C. §

1985 (Conspiracy with Civil Rights);" (4) "Assault and Battery;" (5) "Doctrine of Respondeat

Superior;" (6) "The Failure to Implement the Public Policy;" (7) "Violation of an Express or

Implied Contract;" (8) "Negligence;" and (9) "Liability of Defendants Jointly, Severally or

Individually."  In lieu of filing an Answer, Defendants moved to dismiss Count I as to all

Defendants, Count II as to all Defendants except Cabasa, Count III as to all Defendants, Count

IV as to all Defendants, Count V as to all Defendants, Count VI as to all Defendants, Count VII

as to all Defendants, Count VIII[6] as to all Defendants except Cabasa, and Count IX as to all

Defendants.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure

to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v.

Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a

motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to

relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making that determination, a court must conduct a two-part analysis.  Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must

separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to

show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is

a "context-specific task" that requires the court to "draw on its judicial experience and common

sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely

possible rather than plausible.  See id.

---

[6] The Second Amended Complaint mis-numbers Count VIII as Count VII and Count IX as Count VIII.  The Court
refers to the Counts by reference to their proper numerical ordering.

### III.    DISCUSSION

#### A.  Count II – Plaintiff's Fourteenth Amendment Claims under 42 U.S.C. § 1983

Count II asserts a claim under § 1983 against all Defendants for violating the Fourteenth Amendment by depriving him of liberty without due process.[7]  Plaintiff asserts three Fourteenth Amendment violations:  (1) his forced medication; (2) his forcible restraint; and (3) Defendants' failure to timely treat his ankle injury.  All Defendants except Cabasa move to dismiss this claim. The moving Defendants do not argue that Plaintiff's allegations fail to establish that someone violated Plaintiff's Fourteenth Amendment rights.  Rather, Defendants argue that there is no vicarious liability under § 1983, and Plaintiff does not allege that they participated in the purported constitutional violations.[8]

There is no vicarious liability under § 1983.  See Iqbal, 129 S. Ct. at 1949 ("vicarious liability is inapplicable to . . . § 1983 suits").  A government official is liable under § 1983 only if he personally violates the plaintiff's constitutional or statutory rights under the color of state law. Id.  "A plaintiff must plead that each Government-official defendant, through the official's own inidividal actions, has violated the Constitution."  Id.  Thus, an official is not liable under § 1983 if he simply had "knowledge" or "acquiesced" in another official's unlawful conduct.  Id. at 1957.

---

[7] Plaintiff also asserts that his Fourteenth Amendment due process rights are "enforceable under . . . the Constitution of the State of New Jersey."  (Second Am. Compl. ¶ 79).  That is incorrect.  The New Jersey State Constitution does not create a remedy for violations of the Federal Constitution.  Moreover, if Plaintiff intends to assert a separate cause of action under the New Jersey Civil Rights Act for violations of his rights under the New Jersey Constitution, he must separately and specifically plead that claim.  The Court will not infer an entire cause of action from an errant and incorrect statement tacked to the end of an allegation.  To the degree Plaintiff intended to assert a claim for violations of his New Jersey Constitutional rights, that claim is dismissed.

[8] Defendants do not challenge the merits of Plaintiff's Fourteenth Amendment claim, and the Court does not address whether Plaintiff's allegations are sufficient to state a claim for violation of Plaintiff's Fourteenth Amendment due process rights.

Nevertheless, after the Supreme Court's ruling in Iqbal, the Third Circuit recognized two theories of "supervisory liability" under § 1983.  See Santiago v. Warminster Twp., 629 F.3d 121, 129 n. 5 (3d Cir. 2010).  First, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  Second, supervisors can be "liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'"  Id. (quoting A.M. ex rel. J.M.K., 372 F.3d at 586).  Although the Third Circuit has "expressed uncertainty as to the viability and scope of supervisory liability after Iqbal," it has yet to alter those two tests.  Santiago, 629 F.3d at 130 n. 8 (stating that it was unnecessary to address the effect of Iqbal on the two tests because the particular case on appeal failed to satisfy even the pre-Iqbal standard).  Nevertheless, in view of Iqbal, courts in this District have recognized that "personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right."  Campbell v. Gibb, No. 10-6584, 2011 U.S. Dist. LEXIS 73071, at *25 (D.N.J. July 7, 2011).

The Court reviews the legal elements of all three Fourteenth Amendment violations and analyzes whether Plaintiff pleads facts sufficient to state a claim against each named Defendant.[9]

---

[9] Count I of the Second Amended Complaint alleges in its entirety:  "Defendant's conduct, as described in this Complaint, is carried out under the color and pretense of New Jersey state law.  The actions of Defendants violated Plaintiff's civil rights as defined and granted by Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 1983) (civil action for deprivation of Rights)."  (Second Am. Compl. ¶ 82-83) (paragraph numbering and formatting omitted).

Plaintiff seems to equate Title VI of the Civil Rights Act of 1964 with Section 1983.  Title VI of the Civil Rights Act of 1964 provides:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Section 1983, on the other hand, provides that any person who acts under the color of state law shall be liable if he deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

Count I fails to state a claim under either Title VI or Section 1983.  Plaintiff does not allege that Defendants discriminated against him on the basis of "race, color, or national origin."  See 42 U.S.C. § 2000b; see generally Barnes v. Gorman, 536 U.S. 181, 186 (2002) (discussing Title VI).  Thus, Title VI does not apply.  Count I also fails to identify any statutory or constitutional right that Plaintiff seeks to redress through § 1983.  It is axiomatic that

### 1.  Forced Medication and Physical Restraint

Plaintiff claims that Defendants violated his Fourteenth Amendment substantive and procedural due process liberty interests by physically restraining him and medicating him against his will.

"[P]atients committed to state custody have a constitutionally protected liberty interest [under the Fourteenth Amendment] in being free from unreasonable bodily restraints."  Brandt v. Monte, 626 F. Supp. 2d 469, 475 (D.N.J. 2009) (citing Youngberg v. Romeo, 457 U.S. 307, 315 (1982)).  That liberty interest includes the right to refuse administration of antipsychotic drugs. See Rennie v. Klein, 720 F.2d 266, 269 (3d Cir. 1983) (applying Youngberg and concluding that involuntarily committed patients have a constitutional right to refuse treatment).  The liberty interest includes both a substantive and procedural component.  Brandt, 626 F. Supp. 2d at 478.

The substantive right concerns the "factual circumstances that must exist before the State may administer antipsychotic drugs to the [patient] against his will."  Washington v. Harper, 494 U.S. 210, 220 (1990).  "The state may override this right when the patient is a danger to himself or others."  Brandt, 626 F. Supp. 2d at 476.  A court in this District recently synthesized the standard governing the state's ability to override a patient's right to refuse treatment as follows:

> If a patient constitutes a danger to himself or to others, medical authorities may, in the exercise of professional judgment, administer drugs against the patient's will.  The exercise of professional judgment does not necessarily require administration of the "least restrictive" treatment, but neither does it free medical authorities to administer whatever treatment they prefer.  Medical authorities may administer treatment only as "necessary to prevent the patient from endangering himself or others," and the exercise of professional judgment may require them to consider available

---

Section 1983 "is not a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred."  Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  Thus, to state a claim under § 1983, Plaintiff must allege that Defendants deprived him of rights secured by the Constitution or federal statutes.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  Count I does not include any such allegations.  Thus, Count I is dismissed as to all Defendants for failure to state a claim under Rule 12(b)(6).

> alternatives in the context of such factors as the harmful side-
> effects that a patient may experience.

Id. (internal citations omitted).  The Supreme Court recently addressed the substantive standard for forcibly administering treatment in the criminal context.  See Sell v. United States, 539 U.S. 166 (2003).  In Sell, the Supreme Court held that the relevant inquiry is "whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, . . . to [mitigate] the individual's dangerousness . . . ."[10]  Sell, 539 U.S. at 181-82.

The procedural right concerns the process due to a patient when the government deprives the patient of constitutionally protected liberties.  Brandt, 626 F. Supp. 2d at 487.  In determining whether the government provides adequate process, courts balance the three factors articulated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 334 (1976):

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the
> fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail.

Id.

Here, Plaintiff argues that each individual Defendant violated his Fourteenth Amendment rights by forcibly medicating and restraining him even though he was not a threat to himself or others.  Cabasa, the nurse who ordered Plaintiff's restraint and medication and personally restrained and medicated Plaintiff, does not move to dismiss this claim.  The Court agrees that

---

[10] Although Sell did not address civilly committed patients, it is relevant here because "[p]ersons who have been involuntarily committed are entitled to more considerate treatment . . . than criminals whose conditions of confinement are designed to punish."  Youngberg, 457 U.S. at 321-22; see Brandt, 626 F. Supp. 2d at 477 (noting the relevance of Sell in the civil commitment context).  Thus, Plaintiff is entitled to at least as much protection as the Supreme Court awarded the plaintiff in Sell.

Plaintiff fails to state a claim against the remaining Defendants (Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, Dr. Chang, and Senkovic) based on Plaintiff's restraint and medication.

Regarding Senkovic and Gardenshire, Plaintiff alleges only that they are nurses employed by Ancora who are generally responsible for patients.  (Second. Am. Compl. ¶ 5).  Plaintiff alleges that Kellum is a "human services assistant" employed by Ancora.  According to Plaintiff, Kellum searched Plaintiff's room, discovered the coffee, and reported it to Cabasa.  Plaintiff does not allege that Kellum participated in restraining or medicating Plaintiff.  Regarding Raymond Fisher, a "human services technician," Plaintiff alleges only that before Plaintiff was restrained, Fisher was "trailing plaintiff" in the hall and that he followed Plaintiff to the patient telephone.[11]  Plaintiff alleges that Dr. Sarmiento, a physician, examined Plaintiff the day after Plaintiff was restrained and medicated.  Plaintiff alleges that Dr. Patel is Plaintiff's "primary care physician" and that Dr. Patel was notified two days after the incident that Plaintiff's ankle was fractured.  Plaintiff alleges that Dr. Chang, a psychiatrist, signed a report after the incident stating that Plaintiff was not injured.

In sum, Plaintiff does not allege that any of the remaining Defendants participated in Cabasa's decision to restrain and medicate Plaintiff or that they were one of the nine staff members who actually restrained Plaintiff.[12]  Nor does Plaintiff allege that any of the remaining Defendants exercised any authority or control over Cabasa's decision to restrain and medicate Plaintiff or any control over Ancora's procedures for forcibly medicating patients.  Thus,

---

[11] Plaintiff alleges that Fisher and Kellum are generally responsible for "such persons as [P]laintiff."  (Id. ¶ 5).

[12] Plaintiff argues that the Court should infer from paragraphs 27, 41, 42, and 43 that Defendants were personally involved in Plaintiff's restraint and medication.  (See Pl.'s Opp. Br. at 48-49).  Those allegations state only that unidentified staff members assisted Cabasa in restraining and medicating Plaintiff.  Nowhere does Plaintiff allege specific facts from which the Court may draw the plausible inference that the named Defendants personally participated in Plaintiff's restraint and medication.  Indeed, Plaintiff's allegations create the inference that Defendants Chang and Patel were not present when Plaintiff was restrained.  Rule 8 requires more specificity as to the conduct of the individual Defendants than is provided in the Second Amended Complaint.

Plaintiff fails to state a claim against any of the remaining Defendants because he does not allege facts sufficient to establish Defendants' direct involvement in his restraint or that Defendants are liable under the Third Circuit's supervisory liability precedent.

### 2.   Failure to Timely Provide Medical Care

Plaintiff claims that all Defendants violated his Fourteenth Amendment due process rights by failing to provide adequate medical care.  Specifically, Plaintiff claims that all Defendants failed to timely diagnose and treat his ankle injury.

The Fourteenth Amendment protects an involuntarily committed patient's right to adequate medical care.  Youngberg, 457 U.S. at 324.  In Youngberg, the Supreme Court expressly rejected the application of the Eighth Amendment's "deliberate indifference" standard to claims by civilly committed patients under the Fourteenth Amendment.  Id. at 325 ("In this case, we conclude that the jury was erroneously instructed on the assumption that the proper standard of liability was that of the Eighth Amendment.").  Instead, the Court adopted the "professional judgment standard," which provides that an official is liable only if a "decision . . . is . . . a substantial departure from accepted professional judgment, practice, or standards."  Id. at 323.

The Third Circuit has recognized that Youngberg, "unambiguous[ly] reject[ed] . . . the deliberate indifference standard."[13]  Shaw v. Strackhouse, 920 F.2d 1135, 1148 (3d Cir. 1990).

---

[13] The Court notes that, relying on a non-precedential opinion in Rivera v. Marcoantonio, 153 F. App'x. 857, 859 (3d Cir. 2005), some district courts in this circuit have applied the deliberate indifference standard to Fourteenth Amendment claims by civilly committed patients.  See, e.g., Lewis v. Pearsall, No. 08-786, 2011 U.S. Dist. LEXIS 65742, at *18 ("The Third Circuit has found that Eighth Amendment standards are applicable to a civilly committed patient's claim under the Due Process Clause of the Fourteenth Amendment."); Aruanno v. Green, No. 09-1542, 2011 U.S. Dist. LEXIS 66578, at *19 n.3 (D.N.J. June 22, 2011); Aruanno v. Caldwell, No. 09-5652, 2011 U.S. Dist. LEXIS 61288, at *19-20 n.5 (D.N.J. June 8, 2011).  However, following the Third Circuit's precedential ruling in Shaw, this Court applies the professional judgment standard as explained above.  See Shaw, 920 F.2d at 1148.  In any event, the deliberate indifference standard is more difficult for a plaintiff to overcome than the professional judgment standard, and, as discussed above, Plaintiff fails to state a claim under the professional judgment standard against the remaining Defendants (Gardenshire, Kellum, Fisher, Sarmiento, Patel, Chang, and Senkovic).

The Third Circuit has also found that the professional judgment standard is not equivalent to negligence.  Id. at 1146-47 (citing Daniels v. Williams, 474 U.S. 327 (1986), for the proposition that the professional judgment standard requires a plaintiff to prove more than simple negligence).   According to the Third Circuit:

> [P]rofessional judgment appears to us to be a substantially less onerous standard than negligence from the viewpoint of the public actor. Indeed, in our view, professional judgment more closely approximates -- although, as we have discussed, remains somewhat less deferential than -- a recklessness or gross negligence standard. Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.

Id. at 1146.

The Third Circuit has further explained that the professional judgment standard applies, as its title suggests, only to professionals.  Id. at 1147.  In this context, professionals are "[p]ersons competent, whether by education, training or experience, to make the particular decision at issue."  Youngberg, 457 U.S. at 323 n. 30.  "Nonprofessional employees who provide care for institutionalized mentally retarded individuals are subject even after Youngberg, only to a deliberate indifference standard."  Shaw, 920 F.2d at 1147.

Here, Plaintiff claims that Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, Dr. Chang, and Senkovic are liable under § 1983 because they failed to provide medical care as required by the Fourteenth Amendment.  Specifically, Plaintiff alleges that Defendants failed to timely diagnose and treat Plaintiff's broken ankle.  However, Plaintiff does not allege that Senkovic, Gardenshire, Kellum, or Fisher restrained Plaintiff, examined Plaintiff after he was restrained, or treated him after he was restrained.  Nor does Plaintiff allege that they were responsible for supervising Plaintiff's treatment following the incident.  Thus, Plaintiff fails to

state a claim against those four Defendants based on their direct involvement in Plaintiff's treatment or under the Third Circuit's supervisory liability precedent.

Moreover, even if the Court accepts that all four Defendants were generally responsible for Plaintiff's well being, Plaintiff's allegations do no establish that Senkovic, Gardenshire, Kellum, or Fisher failed to exercise professional judgment because there is no factual basis for the Court to infer that they knew about Plaintiff's alleged symptoms.  Thus, Plaintiff fails to plead facts sufficient to establish that Defendants' alleged misconduct was recklessness or grossly negligent, as required by the professional judgment standard.[14]  See Shaw, 920 F.2d at 1146 ("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").

Regarding the other Defendants, Plaintiff alleges that Dr. Sarmiento, a physician, examined Plaintiff the day after he was injured.  However, when Dr. Sarmiento examined Plaintiff, Dr. Sarmiento ordered x-rays of Plaintiff's ankle, prescribed Motrin, placed Plaintiff in a wheel chair, and ordered that Plaintiff ice and elevate his ankle.  (Second Am. Compl. ¶ 48).  Thus, by Plaintiff's own admission, Dr. Sarmiento was proactive in addressing Plaintiff's injuries when he examined Plaintiff.  Accordingly, Plaintiff's allegations regarding Dr. Sarmiento do not establish that Dr. Sarmiento failed to exercise professional judgment in responding to Plaintiff's injuries.

Regarding Dr. Patel, Plaintiff's primary care physician, Plaintiff alleges only that Dr. Patel was notified two days after the incident that Plaintiff's ankle was fractured.  Plaintiff nevertheless argues that Dr. Patel failed to exercise professional judgment because Plaintiff was

---

[14] It is unclear whether Kellum and Fisher qualify as professionals subject to the professional judgment standard or whether they are nonprofessional care-givers subject to the deliberate indifference standard.  Kellum is a "human services assistant" and Fisher is a "human services technician."  However, because the deliberate indifference standard is more difficult for a plaintiff to satisfy than the professional judgment standard, Plaintiff fails to state a claim against Kellum and Fisher even if the deliberate indifference standard applies to them.

not examined by an orthopedic surgeon until three days later.  However, Plaintiff does not allege the Dr. Patel delayed making an appropriate referral, refused to monitor Plaintiff's condition, or otherwise acted in a grossly negligent manner as required by the professional judgment standard.

Regarding Dr. Chang, a psychiatrist and physician, Plaintiff alleges that Dr. Chang examined him within hours of his injury and reported that Plaintiff' had "no injuries."  (Second Am. Compl. ¶ 47).  Plaintiff also alleges that his injury was obvious, severe, and that he was complaining of extreme pain and discomfort.  According to Plaintiff, those facts are sufficient to infer that Dr. Chang failed to exercise professional judgment.  The Court agrees.  It is reasonable to infer from Plaintiff's allegations that Dr. Chang examined Plaintiff, observed his injury and his reports of pain, but nevertheless reported that Plaintiff had "no injuries."  Those facts state a claim under the Fourteenth Amendment for failure to provide adequate medical care.

In sum, the Court grants Defendants' motion to dismiss Count II against Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, and Senkovic.  The Court also finds that Count II of the Second Amended Complaint fails to state a claim against Dr. Chang based on Plaintiff's restraint and forced medication.  However, Count II states a claim against Dr. Chang for failure to provide medical care.[15]

### B.  Count III – Plaintiff's Claim under 42 U.S.C. § 1985

Count III alleges:  "The intentional failure of Defendant APH [Ancora Psychiatric Hospital], by and through its employees to prevent the infringement of the Plaintiff's civil rights was a violation of 42 U.S.C. § 1985."  (Second. Am. Compl. ¶ 87).  Count III fails to state a claim.

---

[15] Defendants do not move to dismiss Count II against Cabasa.  Thus, the Court expresses no opinion regarding the merits of that claim against Cabasa as alleged in Count II.

First, Defendant Ancora Psychiatric Hospital is no longer a defendant in this matter.  The Second Amended Complaint asserts Count III only against Ancora Psychiatric Hospital and does not mention any of the individual Defendants.  Thus, Count III is dismissed as to Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, Senkovic, Dr. Chang, and Cabasa.

Second, even if the Court were to assume (contrary to the language of the Second Amended Complaint) that Plaintiff asserts Count III against the individual Defendants, Plaintiff fails to allege facts sufficient to state a claim under 42 U.S.C. § 1985.  To state a claim under § 1985(3), for conspiracy to violate a person's civil rights, a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

Plaintiff fails to allege facts sufficient to satisfy at least the first and second elements.  Plaintiff does not allege that Defendants entered into an intentional conspiracy to violate Plaintiff's rights.  Plaintiff alleges only that Defendants' failure to prevent harm to Plaintiff amounts to a violation of § 1985.  Without more, that allegations is insufficient to establish an intentional conspiracy.  At minimum, Plaintiff must allege facts sufficient to establish that Defendants entered into an agreement to injure Plaintiff by violating his civil rights.  Lake, 112 F.3d at 685.  Additionally, although the Third Circuit has held that "conspiracies resulting from animus against mentally retarded individuals" are actionable under § 1985, see McCleester v. Mackel, No. 06-120, 2008 U.S. Dist. LEXIS 27505, at *93 (W.D. Pa. Mar. 27, 2008) (citing Lake, 112 F.3d at 687-88), Plaintiff does not allege any facts suggesting that he was forcibly restrained or medicated because of discriminatory animus of any kind.  Plaintiff alleges only that

he was restrained and medicated without justification.  The Second Amended Complaint contains no suggestion that Defendants harbor any discriminatory animus towards mentally ill patients.  Thus, Plaintiff fails to state a claim under § 1985.

### C.  Count IV – Assault and Battery

Count IV asserts a claim for assault and battery against "Defendants."  All Defendants except Cabasa move to dismiss Plaintiff's assault and battery claim.

Pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1, et seq., "a public employee is liable for injury caused by []his act or omission to the same extent as a private person."  N.J. Stat. Ann. § 3-1(a).  Thus, a plaintiff may sue a public employee for common-law assault and battery.  See, e.g., Estate of Morales v. City of Jersey City, No. 05-5423, 2009 U.S. Dist. LEXIS 57588, *42-44 (D.N.J. July 7, 2009) (analyzing a claim for assault and battery against a police officer).  Under New Jersey law, a battery is an "unauthorized invasion of the plaintiff's person."  Perna v. Pirozzi, 457 A.2d 431, 460 (N.J. 1983).  An assault under New Jersey law is "an impairment of [the plaintiff's] 'interest in freedom from apprehension of a harmful or offensive contact.'"  Kelly v. Cnty. of Monmouth, 883 A.2d 411, 461 n. 3 (N.J. Super. Ct. App. Div. 2005) (quoting Prosser and Keeton, The Law of Torts, §10, at 43 (5th ed., 1984)).

Although the New Jersey Tort Claims Act provides several defenses and exceptions to liability, see, e.g., N.J. Stat. Ann. § 59:3-1 ("A public employee is not liable for an injury where a public entity is immune from liability for that injury"); N.J. Stat. Ann. § 59:3-3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law"), Defendants argue only that Plaintiff fails to state a claim because he does not allege that they assaulted him.  The Court agrees.  As discussed above, Plaintiff does not allege that Gardenshire,

Kellum, Fisher, Dr. Sarmiento, Dr. Patel, Senkovic, or Dr. Chang personally participated (directly or indirectly) in restraining or medicating Plaintiff.  Thus, Plaintiff fails to state a claim for assault and battery against those Defendants.

### D.  Count V – "Respondeat Superior"

Count V asserts a claim under the "Doctrine of Respondeat Superior."  Count V includes four paragraphs alleging that "John Does #1-15" are vicariously liable for the conduct of "Defendants" under the "doctrine of respondeat superior."  (See Second Am. Compl. ¶¶ 93-96). All Defendants move to dismiss this claim.

As noted above, Ancora is no longer a Defendant.  (See Doc. No. 18).  Count V does not assert any allegations against Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, Senkovic, Dr. Chang, or Cabasa.  If Rule 8's pleading requirement has any substance, it requires a Plaintiff to specifically identify the defendants against whom a claim is asserted.  Moreover, as noted above, the doctrine of respondeat superior does not apply to claims under § 1983.  See Iqbal, 129 S. Ct. at 1949.  Plaintiff's jumbled pleading does not identify an alternative basis for Plaintiff's "respondeat superior" claim, and it is not the responsibility of this Court to search for a cognizable legal theory to salvage Plaintiff's deficient pleading.  Thus, the Court dismisses Count V as to all Defendants.

### E.  Count VI – New Jersey Patients' Bill of Rights

Count VI asserts a claim for "The Failure to Implement the Public Policy," but the claim includes multiple alleged violations of the New Jersey Patients' Bill of Rights, N.J. Stat. Ann. § 30:4-4-24.2.  All Defendants move to dismiss Count VI.

A patient may sue in court to enforce his rights under the Patients' Bill of Rights.  N.J. Stat. Ann. § 30:4-24.2(h) ("Any individual subject to this Title shall be entitled . . . [to] enforce

any of the rights herein stated by civil action or other remedies otherwise available by common law or statute.”); see Smith v. Shapiro, 484 A.2d 1282, 1286 (N.J. Super. Ct. App. Div. 1984). The Patients’ Bill of Rights includes:  (1) the right to the least restrictive conditions necessary to achieve the purposes of treatment, N.J. Stat. Ann. § 30:4-24.2e(2); (2) the right to privacy and dignity, N.J. Stat. Ann. § 30:4-24.2e(1); (3) the right to be free from unnecessary or excessive medication, N.J. Stat. Ann. § 30:4-24.2d(1); (4) the right to be free from physical restraint and isolation, except for emergency situations, N.J. Stat. Ann. § 30:4-24.2d(3); and (5) the right to be free from corporal punishment, N.J. Stat. Ann. § 30:4-24.2d(4).

Plaintiff fails to allege facts establishing that Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, or Senkovic denied Plaintiff his rights under the Patients’ Bill of Rights.  Plaintiff does not allege that any of those Defendants participated in Plaintiff’s restraint or forcible medication.  Nor does Plaintiff allege that any of those Defendants participated in Cabasa’s decision to restrain and medicate him.  Thus, the Court finds no basis for inferring that those Defendants violated any of Plaintiff’s rights under the Patients’ Bill of Rights.

Regarding Dr. Chang, Plaintiff alleges that Dr. Chang observed his obvious ankle injury and nevertheless recorded that Plaintiff had no injuries and failed to timely treat Plaintiff.  Those allegations may support a claim for violation of Plaintiff’s rights.  Additionally, Plaintiff alleges that Cabasa ordered Plaintiff’s restraint and forcible medication without justification.  That allegation supports a claim under the Patients’ Bill of Rights.  Thus, the Court dismisses Count VI only as to Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, and Senkovic.

**F.  Count VII – Breach of Contract**

Count VII alleges that “Defendants APH [Ancora Psychiatric Hospital] and John Does #1-5 (fictitiously plead)’s actions and inactions and the APH policy, created an express or

implied contract of a duty to provide adequate and necessary medical care, in addition, the duty to preserve the patient's privacy and civil rights." (Second Am. Compl. ¶ 121).

To state a claim for breach of contract under New Jersey law, a plaintiff must prove a valid contract, defective performance by the other party, and resulting damages. Coyle v. Englander's, 488 A.2d 1083, 1088-89 (N.J. Super. Ct. App. Div. 1985). Plaintiff alleges that a contract existed between Plaintiff and Ancora Psychiatric Hospital. Ancora Psychiatric Hospital was previously dismissed by the Court. (See Doc. No. 18). Plaintiff does not allege that there was an express or implied contract between any of the individual Defendants. Because Plaintiff does not allege the existence of a contract, Count VII fails to state a claim against Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, Senkovic, Dr. Chang, or Cabasa.

### G. Count VIII – Negligence

Count VIII asserts a negligence claim against all Defendants. All Defendants except Cabasa move to dismiss Count VIII. Defendants argue that Plaintiff fails to allege facts that amount to a plausible negligence claim.

Pursuant to the New Jersey Tort Claims Act, public employees are liable for their negligent acts or omissions "to the same extent as a private person." See N.J. Stat. Ann. § 59:3-1; see Ogborne v. Mercer Cemetery Corp., 963 A.2d 828, 833-34 (N.J. 2009) (discussing liability of public employees for negligence under the New Jersey Tort Claims Act). Under New Jersey law, to succeed on a negligence claim, a plaintiff must establish: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages." Polzo v. Cnty. of Essex, 960 A.2d 375, 384 (N.J. 2008).

Additionally, if a plaintiff asserts a professional negligence claim, such as a medical malpractice claim, New Jersey's Affidavit of Merit Statute requires the plaintiff to file "an

affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices."  N.J. Stat. Ann. § 2A:53A-27.  "The plaintiff's failure to provide an affidavit of merit is tantamount to a failure to state a cause of action."  Burt v. West Jersey Health Sys., 771 A.2d 683, 687 (N.J. Super. Ct. App. Div. 2001) (citing N.J. Stat. § Ann. 2A:53A-29).  However, in Hubbard v. Reed, 774 A.2d 495 (N.J. 2001), the New Jersey Supreme Court held that when a defendant's negligence is so apparent that expert testimony is unnecessary at trial, the purpose of the affidavit of merit statute – to reduce frivolous lawsuits – would not be furthered by requiring an affidavit of merit.  Id. at 499-500.  The so-called "common knowledge" exception "applies 'where jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'"  Id. at 499 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778, 785 (N.J. 1999)) (holding that common knowledge exception applied where a dentist extracted the wrong tooth).

Plaintiff fails to allege facts sufficient to establish that Defendants Gardenshire, Kellum, Fisher, and Senkovic breached a duty of care.  Plaintiff alleges that those Defendants were generally responsible for Plaintiff's welfare.  However, Plaintiff does not explain the scope of those Defendants' responsibilities for Plaintiff or any specific act or omissions by those Defendants that proximately caused his injuries.  In essence, Plaintiff alleges only that they were generally responsible for patients' welfare because they treated and served Ancora patients. Plaintiff claims that because he was injured while under Ancora's care, Defendants were

20

necessarily negligent.  Those allegations are insufficient to state a negligence claim under New Jersey law.

Plaintiff alleges that Dr. Sarmiento, a physician, examined him the day after his injuries. Although a physician certainly owes patients a duty of care, Plaintiff does not allege any specific facts establishing that Dr. Sarmiento breached that duty.  Indeed, Plaintiff alleges that Dr. Sarmiento identified his ankle injury, ordered x-rays, proscribed medication, and placed Plaintiff in a wheelchair.  Those allegations do not establish a plausible negligence claim.  Moreover, Plaintiff did not submit an affidavit of merit regarding Dr. Sarmiento's alleged professional negligence.  Thus, Plaintiff's claim against Dr. Sarmiento fails.  See N.J. Stat. Ann. § 2A:53A-29 (stating that failure to submit an affidavit of merit amounts to a "failure to state a cause of action").

Regarding Dr. Patel, Plaintiff's primary physician, Plaintiff alleges that although Dr. Patel was informed of Plaintiff's injuries two days after they occurred, Plaintiff was examined by an orthopedic surgeon three days later.  Those allegations suggest a factual theory of negligence, i.e., that Dr. Patel failed to respond to Plaintiff's known injuries with appropriate haste. However, because Plaintiff did not submit an affidavit of merit regarding Dr. Patel's alleged malpractice.  Plaintiff's claim against Dr. Patel is dismissed.

Plaintiff alleges that Dr. Chang, a physician, was negligent because he failed to diagnose Plaintiff's obvious ankle fracture when he examined Plaintiff two hours after his alleged injury. Those allegations are sufficient to state a claim for professional negligence.  Because Plaintiff claims that his ankle fracture was obvious and Dr. Chang was negligent by simply failing to observe and diagnose the injury, the common knowledge exception to the Affidavit of Merit Statute applies.  Plaintiff states a plausible negligence claim against Dr. Chang.

21

In sum, the Court dismisses Count VIII as to Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, and Senkovic.

### H.  Count IX – "Joint and Several Liability"

Count VIII asserts a claim for joint and several liability.  All Defendants move to dismiss this claim because "joint and several liability is not a cause of action but a damages provision" that allows a plaintiff to recover an entire judgment from one of the defendants.  (See Def.'s Br. at 15).

Defendants are correct that New Jersey's joint-and-several liability statute does not create an independent basis for tort liability.  See N.J. Stat. Ann. § 2A:15-5.3.  The statute provides that a plaintiff may collect an entire judgment from any defendant who is found to be "60% or more responsible for the total damages."  N.J. Stat. Ann. § 2A:15-5.3.  Because only Cabasa and Dr. Chang remain in the case, Plaintiff may pursue joint and several liability only against them. Count IX is otherwise dismissed.

### I.  Plaintiff's Motion to Seal

Plaintiff moves to seal the medical records that he submitted in opposition to Defendants' motions to dismiss.  Defendants do not oppose Plaintiff's motion.

There is a strong presumption in favor of public access to judicial proceedings and records.  In re Cendant, Corp., 260 F.3d 183, 192 (3d Cir. 2001).  "To overcome this presumption, the movant must establish 'good cause' for the protection of the material at issue." Opperman v. Allstate N.J. Ins. Co., No. 07-1887, 2009 U.S. Dist. LEXIS 111733, at *31-32 (D.N.J. Nov. 13, 2009).  "To establish good cause, the movant must show that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'"  Id. at *31 (quoting Schatz-Bernstein v. Keystone Food Prods., Inc., No. 08-3079, 2009 U.S. Dist. LEXIS 34700, at

*1 (D.N.J. Apr. 17, 2009).  "The particularity of the showing required is set forth in Local Rule 5.3(c), which demands that a motion to seal describe: '(a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrant the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; and (d) why a less restrictive alternative to the relief sought is not available.'"  Id. (quoting L. Civ. R. 5.3(c)(2)).  Additionally, if a document contains both confidential and non-confidential information, the movant must submit a copy of the document with proposed redactions of confidential information as well as an unredacted version of the document.  See L. Civ. R. 5.3(c)(3).

"There is no question that medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."  United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980); see Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (right to privacy in one's medical records is clearly recognized).  Thus, where the party complies with Loc. Civ. R. 5.3's requirements for placing documents under seal, the Court has sealed a party's medical records.  See Locascio v. Balicki, No. 07-4834, 2011 U.S. Dist. LEXIS 66679, at *17-18 (D.N.J. June 22, 2011) (placing medical records under seal); Harris v. Nielsen, No. 09-2982, 2010 U.S. Dist. LEXIS 58993, at *9-13 (D.N.J. June 15, 2010) (same).

Here, Plaintiff moves to seal medical records that he submitted in opposition to Defendants' motion to dismiss.  In compliance with L. Civ. R. 5.3, Plaintiff publicly filed a version of his opposition papers that excluded his medical records and submitted a separate version to the Court with the allegedly confidential records attached.  The medical records contain notations by doctors regarding Plaintiff's symptoms, treatment, and recovery.  Because

Plaintiff has complied with L. Civ. R. 5.3, and because "the disclosure of Plaintiff's medical history . . . [is] a clearly defined serious injury sufficient to support the sealing of the documents," <u>Harris</u>, 2010 U.S. Dist. LEXIS 58993, at*13, the Court grants Plaintiff's motion to seal.

### IV.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted in part and denied in part as follows: (1) Count I (§ 1983) is dismissed as to all Defendants; (2) Count II (Fourteenth Amendment) is dismissed as to Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, and Senkovic; (3) Count III (§ 1985) is dismissed as to all Defendants; (4) Count IV (Assault and Battery) is dismissed as to all Defendants except Cabasa; (5) Count V ("Respondeat Superior") is dismissed as to all Defendants; and (6) Count VI (New Jersey Patients' Bill of Rights) is dismissed as to Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, and Senkovic; (7) Count VII (Breach of Contract) is dismissed as to all Defendants; (8) Count VIII (Negligence) is dismissed as to Defendants Gardenshire, Kellum, Fisher, Dr. Sarmiento, Dr. Patel, and Senkovic; (8) Count IX ("Joint and Several Liability") is dismissed, but Plaintiff may pursue joint and several liability against Dr. Chang and Cabasa.  For the reasons discusses above, Plaintiff's motion to seal is granted.  An appropriate Order shall enter.

Dated: <u>8/18/2011</u>                                        /s/ Robert B. Kugler
                                                         ROBERT B. KUGLER
                                                         United States District Judge